J-S75037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY C. CAMPBELL, | : | |
| | : | |
| Appellant | : | No. 3627 EDA 2017 |

Appeal from the Judgment of Sentence October 2, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009388-2016,
CP-51-CR-0009390-2016, CP-51-CR-0009397-2016,
CP-51-CR-0009405-2016, CP-51-CR-0009407-2016,
CP-51-CR-0009409-2016, CP-51-CR-0009415-2016,
CP-51-CR-0009777-2016, CP-51-CR-0010115-2016

BEFORE: PANELLA, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED JANUARY 24, 2019**

Anthony C. Campbell ("Campbell") appeals from the judgment of sentence entered following his non-negotiated guilty plea to multiple counts of robbery (threat of serious bodily injury), burglary, criminal conspiracy, carrying a firearms without a license, possession of an instrument of crime, false imprisonment, aggravated assault, theft and attempted burglary.[1] We affirm in part and vacate in part.

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3502(a)(1), 903, 6106(a)(1), 907(a), 2903, 2702, 3925, 901.

In its Opinion, the trial court summarized the facts underlying Campbell's guilty pleas, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 1/11/18, at 4-6.

Campbell entered non-negotiated guilty pleas to the above charges, in relation to a series of home invasions that took place in Philadelphia, Pennsylvania. As a result of his guilty pleas, the trial court sentenced Campbell to an aggregate prison term of 30-60 years. Campbell filed a post-sentence Motion, which the trial court denied. Thereafter, Campbell filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

In this appeal, Campbell challenges the discretionary aspects of his sentence. Brief for Appellant at 10. Specifically, Campbell claims that, although he was sentenced within the statutory limits, the trial court "erred in double-counting [his] prior record score and offense gravity score." *Id.*

"A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right." *Commonwealth v. Grays*, 167 A.3d 793, 815 (Pa. Super. 2017). Prior to reaching the merits of a discretionary sentencing issue,

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Grays***, 167 A.3d at 815-16 (citation omitted).

Here, Campbell timely filed his Notice of Appeal, preserved his claim in a post-sentence Motion, included in his brief a Pa.R.A.P. 2119(f) Statement of the reasons he relies upon for allowance of appeal, and has raised a substantial question that his sentence is inappropriate under the Sentencing Code. ***See*** Pa.R.A.P. 2119(f); ***Commonwealth v. Goggins***, 748 A.2d 721, 732 (Pa. Super. 2000) (*en banc*) (stating that a claim that the court double-counted factors included in the sentencing guidelines raises a substantial question). Accordingly, we will address Campbell's sentencing challenge.

Campbell argues that the trial court improperly double-counted Campbell's prior record, when imposing his sentence. Brief for Appellant at 12. Campbell argues that, because the trial court is required to consider the sentencing guidelines, it may not double-count his prior record score or offense gravity score. ***Id.*** According to Campbell, "beyond the fact that previous convictions have had the effect of increasing a defendant's prior record score, the defendant's prior record does not provide a basis for imposing an aggravated[-]range sentence because those factors have already been taken into account by the guidelines range itself." ***Id.*** Campbell directs our attention to the trial court's statement, at sentencing, wherein the court took into account Campbell's age at the time he perpetrated the offenses, the predatory nature of the crimes, and his prior record score. ***Id.*** at 14. Campbell points out the trial court's recitation of Campbell's prior arrests,

- 3 -

probation and parole violations in deciding to sentence Campbell within the aggravated range of the guidelines. *Id.*

It is undisputed that sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006).

When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). As we have stated, "a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.*

Upon our review, we do not agree that the trial court improperly "double-counted" certain factors at sentencing. Rather, as the trial court explained in its Opinion, upon review of Campbell's pre-sentence investigation report, the court properly exercised its discretion in sentencing Campbell, and imposing consecutive sentences for some of the offenses. *See* Trial Court Opinion, 1/11/18, at 7-10. We agree with the sound reasoning of the trial

court, and affirm on the basis of the trial court's Opinion with regard to Campbell's claim. ***See id.***

In its Opinion, the trial court additionally states that it imposed an illegal sentence of five to ten years in prison for each of Campbell's convictions for firearms not to be carried without a license. Trial Court Opinion, 1/11/18, at 3 n.4. Our review of the record discloses that for his conviction of carrying a firearm without a license, a third-degree felony, the trial court sentenced Campbell to five to ten years in prison. However, our legislature has provided that a felony of the third degree carries a term of imprisonment "which shall be fixed by the court at not more than seven years." 18 Pa.C.S.A. § 1103(3). Thus, the trial court's sentences for each of Campbell's convictions of firearms not to be carried without a license are illegal. We therefore vacate those sentences. Because our resolution does not disrupt the trial court's sentencing scheme, we need not remand for resentencing on those charges.[2] ***See Commonwealth v. Melvin***, 103 A.3d 1, 57 (Pa. Super. 2014) (declining to

---

[2] In its Opinion, the trial court explained that,

> [t]he concurrent nature of each illegal charge does not alter the sentence scheme for any individual docketing number or [Campbell's] total sentence. Had this [c]ourt retained jurisdiction, it would have *sua sponte* vacated its sentence on each charge. Consequently, this [c]ourt does not see a need for remand[,] and would instead have the illegal sentences vacated.

Trial Court Opinion, 1/11/18, at 3 n.4.

remand for resentencing where the Superior Court's amendment to the sentence did not disrupt the trial court's sentencing scheme).

Judgment of sentence affirmed in part, and vacated in part. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/19

## IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : CP-51-CR-0009388-2016 |
| | : CP-51-CR-0009390-2016 |
| | : CP-51-CR-0009397-2016 |
| | : CP-51-CR-0009405-2016 |
| | : CP-51-CR-0009407-2016 |
| | : CP-51-CR-0009409-2016 |
| | : CP-51-CR-0009415-2016 |
| | : CP-51-CR-0009777-2016 |
| | : CP-51-CR-0010115-2016 |
| | : |
| ANTHONY CAMPBELL, | : |

CP-51-CR-0009777-2016 Comm. v. Campbell, Anthony C.
Opinion

8053732801

### OPINION

**McDermott, J.** **January 11, 2017**

### Procedural History

On August 17, 2016, the Defendant, Anthony Campbell, was arrested and charged, along with his co-defendant Norman Bowen, with Robbery, Burglary, and related offenses arising from a series of home invasions.[1] On July 7, 2017, the Defendant entered into a non-negotiated guilty plea in each of the above captioned matters. This Court deferred sentencing for completion of the Defendant's pre-sentence and mental health reports.

On October 2, 2017, this Court sentenced the Defendant to an aggregate sentence of thirty to sixty years of imprisonment, plus restitution in the amount of $10,000, for the home invasions.[2] In CP-51-CR-0009415-2016, this Court sentenced the Defendant to concurrent

---

[1] Norman Bowen was arrested on August 15, 2016. On July 12, 2017, Norman Bowen entered into a non-negotiated guilty plea related to some of the same home invasion robberies. On October 2, 2017, this Court sentenced him to a total sentence of thirty-four to sixty-eight years of imprisonment. *See* CP-51-CR-0009387-2016, CP-51-CR-0009396-2016, CP-51-CR-0009404-2016, CP-51-CR-0009406-2016, CP-51-CR-0009408-2016, CP-51-CR-0009414-2016, and CP-51-CR-0010116-2016.

[2] The Defendant received no further penalty for his probation violation. *See* CP-51-CR-0501831-2003.

sentences of five to ten years of imprisonment for Robbery, Burglary, Conspiracy, and Firearms Not to be Carried Without a License, with concurrent sentences of one to two years for Possession of an Instrument of Crime ("PIC") and False Imprisonment, for a total sentence of five to ten years of imprisonment.

In CP-51-CR-0009397-2016, this Court sentenced the Defendant to concurrent sentences of five to ten years of imprisonment for Robbery (two counts), Burglary, Conspiracy, and Firearm Not to be Carried Without a License, with concurrent sentences of one to two years for PIC and False Imprisonment, for a total sentence of five to ten years of imprisonment.

In CP-51-CR-0009390-2016, this Court sentenced the Defendant to concurrent sentences of five to ten years of imprisonment for Robbery (two counts), Burglary, Conspiracy, Firearm Not to be Carried Without a License, with a concurrent sentence of one to two years for PIC, for a total sentence of five to ten years of imprisonment.

In CP-51-CR-0009407-2016, this Court sentenced the Defendant to concurrent sentences of five to ten years of imprisonment for Robbery (three counts), Burglary, Conspiracy, Aggravated assaults (two counts), and Firearm Not to be Carried Without a License, with concurrent sentences of one to two years for PIC and False Imprisonment (two counts), for a total sentence of five to ten years of imprisonment.

In CP-51-CR-0009409-2016, this Court sentenced the Defendant to concurrent sentences of five to ten years of imprisonment for Robbery (three counts), Burglary, Conspiracy, Firearm Not to be Carried Without a License, with a concurrent sentence of one to two years for PIC, for a total sentence of five to ten years of imprisonment. In CP-51-CR-0009777-2016, this Court sentenced the Defendant to a sentences of five to ten years of imprisonment for Robbery.

In CP-51-CR-0010115-2016, this Court sentenced the Defendant to concurrent sentences of five to ten years of imprisonment for Burglary (three counts), Conspiracy, Firearm Not to be Carried Without a License, with a concurrent sentence of one to two years for PIC, for a total sentence of five to ten years of imprisonment.

On CP-51-CR-0009388-2016, this Court sentenced the Defendant to concurrent sentences of five to ten years of imprisonment for Robbery, Burglary, and Conspiracy, Firearm Not to be Carried Without a License, with concurrent sentences of one to two years for PIC and False Imprisonment, for a total a total sentence of five to ten years of imprisonment.

In CP-51-CR-0009405,-2016, this Court sentenced the Defendant to concurrent sentences of two to four years of imprisonment for Attempted Burglary and Conspiracy, with concurrent sentences of one to two years for theft, for a current sentence of two to four years of imprisonment.

The sentences in CP-51-CR-0009415-2016, CP-51-CR-0009397-2016, CP-51-CR-0009390-2016, CP-51-CR-0009407-2016, and CP-51-CR-00010115-2016 were each imposed to run consecutively, for a total sentence of thirty to sixty years of imprisonment.[3]

On October 16, 2017, this Court denied the Defendant's Motion for Reconsideration of Sentence. On November 12, 2107, the Defendant timely appealed. On December 4, 2017, the Defendant filed a 1925(b) Statement of Matters Complained of on Appeal.[4]

---

[3] The sentences for CP-51-CR-0009388-2016, CP-51-CR-0009405-2016, CP-51-CR-0009409-2016 were each imposed to be totally concurrent with the Defendant's remaining sentences.

[4] This Court recognizes that it inadvertently imposed an illegal five to ten year term of imprisonment on each of the Defendant's Firearms Not to be Carried Without a License (18 Pa.C.S. § 6106) charges. No objections to the illegal nature of these particular sentences were lodged at the sentencing hearing, within the Defendant's post-sentence motion, or within his Rule 1925(b) Statement. The concurrent nature of each illegal charge does not alter the sentencing scheme for any individual docketing number or the Defendant's total sentence. Had this Court retained jurisdiction, it would have *sua sponte* vacated its sentence on each charge. Consequently, this Court does not see a need for remand and would instead have the illegal sentences vacated.

3

## Facts

At his negotiated guilty plea hearing on July 7, 2017, the Defendant admitted guilt to the following facts:

> [B]etween June 6th and August 8th of 2016 . . . the [D]efendant conspired with another or others to rob the homes and businesses of the complainants. In each incident the perpetrators wore masks and carried firearms and in each incident the victims were targets because they were business owners of Chinese national origin.
>
> [W]ith regards to CP-51-CR-0009390-2016 and CP-51-CR-0009777-2016 . . . [o]n August 8th, 2016, the [D]efendant conspired with Koran Prophet to commit a home invasion robbery at 5143 Haverford Avenue.
>
> . . .
>
> [The] property houses a Chinese restaurant on the first floor and a residence on the second. The [Defendant and Prophet], each armed with a firearm, forcibly entered the property where the complainants, Dinng Lu Xu, Lin Li Ting, and their daughter, Simin Xu, were sleeping. The [Defendant and Prophet] entered the bedroom Mr. Xu and Ms. Ting shared, woke them up and pointed guns at them, demanding money. The [Defendant and Prophet] took nearly $4,000, cell phones, iPads, and pocketbooks from these complainants. [The] Defendant, Koran Prophet, then entered the room where Simin Xu slept. Prophet pointed the gun at her head, held her head down, holding her in place, and then placed his hand under her pants, touching her vagina.
>
> As she continued to struggle and scream, Prophet then placed her in a closet and took her cell phone, money, and computer. The [D]efendant is not licensed to carry a firearm.
>
> . . .
>
> With regards to CP-51-CR-0009397-2016 . . . [o]n August 1st, 2016, the [D]efendant conspired with codefendant, Norman Bowen, to commit a home invasion robbery at 724 South 5th Street. The property houses a Chinese restaurant on the first floor and a residence on the second. The [Defendant and Bowen], each armed with a firearm, bound Xiu Zhen Wang and her 13-year-old son, Vinny Zhang, while threatening them at gunpoint. The [Defendant and Bowen] then took jewelry, an Xbox, cigarettes, cash, and a jar of coins.
>
> . . .
>
> With regards to CP-51-CR-0009405-2016 . . . on June 6th, the [D]efendant conspired with Norman Bowen to commit a home invasion robbery at 6200 Vine Street. The property houses a Chinese

4

restaurant on the first floor and a residence on the second. The [Defendant and Bowen] forcibly entered the restaurant, taking money, cigarettes, cigars, and cash from the store. And the [Defendant and Bowen] attempted to make entry into the residence but were unable to force the door open . . . and were unable to successfully get through the door.

. . .

With regards to CP-51-CR-0009407-2016 . . . [o]n July 28th, 2016, the [D]efendant and codefendant, Norman Bowen, conspired to commit a home invasion robbery at 6000 Master Street. This property houses a Chinese restaurant on the first floor and a residence on the second. The two forcibly entered through the rear security door, causing damage to the premises while wearing masks and gloves. Once inside, they forcibly entered the residence where the victims, Shui Fang Huang, Neng Lin, and their nine-year-old daughter, Lina Lin, were sleeping. The [Defendant and Bowen], both armed with firearms, woke the two and demanded money. Shui Fang Huang and Neng Lin were both pistol-whipped about the head. The [Defendant and Bowen] demanded money and bound and gagged Shui Fang Huang, tying her about the hands and feet and placing a pair of pants in her mouth. The two initially brought Neng Lin downstairs with them in order to direct them where to find money, but then ultimately returned him upstairs and tied him by the hands and feet. The [Defendant and Bowen] ransacked the entire home, including the business and bedrooms of Ms. Huang and Mr. Lin and the bedroom of nine-year-old, Lina. The [Defendant and Bowen] took $3,000 in cash, numerous pieces of jewelry from Ms. Huang's person and her bedroom, as well as the video security system that had been installed in the restaurant. Both Mr. Lin and Ms. Huang suffered injury to their heads as a result of being struck with the firearms by the [Defendant and Bowen].

. . .

Ms. Huang, who had been hit for three times, had headaches for a period of about a month.

. . .

[W]ith regards to CP-51-CR-0009409-2016 . . . [o]n July 31st, 2016, [D]efendant and codefendant, Norman Bowen, along with Shareef Mobley, conspired to commit a home invasion robbery at 6047 Market Street. This property houses a laundromat on the first floor and residence on the second. The [D]efendant, along with Norman Bowen, forcibly entered the business and ultimately the second floor residence where Meiyu Chen and her children, Xial Lin and Rung Lin were asleep. The complainants were awoken with guns pointed to their heads and bound by their hands and feet while the [Defendant and Bowen] took jewelry, $2,000, two computers, a box of tokens, and a large amount of change. During this incident .

5

. . Norman Bowen, pulled down Xial Lin's pants and touched her buttocks.

. . .

With regards to CP-51-CR-0009415-2016 . . . [o]n July 20th, 2016, the [D]efendant and codefendant, Norman Bowen, along with Shareef Mobley, conspired to commit a home invasion robbery at 5150 North 5th Street. This houses a Chinese restaurant on the first floor and a residence on the second. The [D]efendant selected this property after discussions and preparations with Norman Bowen. On the date of the incident, the [D]efendant, along with Shareef Mobley, forcibly entered the property. The complainant, Xin Wu, hid watching on camera as the [D]efendant and Mobley ransacked his home and business at point of gun. The [D]efendant took cigarettes, jewelry, and approximately 9,000 in cash from the complainant.

N.T. 7/7/2017 at 26–43.

## Discussion

The Defendant raises two issues on appeal: (1) whether this Court double counted the severity of the Defendant's crime by weighing factors already considered by the sentencing guidelines within their Offense Gravity Scores when furnishing its sentence; and, (2) whether this Court imposed an unreasonable and excessive sentence when it ordered the consecutive sentences totaling thirty to sixty years of incarceration.

These issues are meritless. When imposing a sentence, a trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense [. . .] and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). It is well-settled that sentencing is a matter vested in the sound discretion of the trial court, and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014) (*citing Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007)). An abuse of discretion is not merely an error in judgment, but a defendant must establish that the sentencing court misapplied the law or

6

exercised its judgment for reasons of partiality, prejudice, bias, or ill-will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003).

A defendant challenging the discretionary aspects of his sentence must establish, *inter alia*, that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Serrano*, 150 A.3d 470, 473 (Pa. Super. 2016) (*quoting Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015) (citations omitted)). A substantial question exists when an appellant raises "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015). The consecutive nature of a defendant's sentence does not raise a substantial question. *Commonwealth v. Zirkle*, 107 A.3d 127, 134 (Pa. Super. 2014).

In imposing a sentence, a court shall follow the general principle that the sentence imposed calls for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that its discretion should not be disturbed. *Commonwealth v. Bullock*, --- A.3d --- (Pa. Super. 2017) (*citing Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009)).

Before imposing sentence, this Court reviewed the Defendant's presentence and mental health reports, and considered the Defendant's rehabilitative needs. This Court reviewed the Defendant's upbringing, educational background, age at the time of the offenses, and criminal

7

history, the latter of which revealed that the Defendant had, as an adult, fourteen prior convictions and eleven commitments. This Court also considered the Defendant's thirteen prior probation violations, resulting in ten revocations of sentence and eight terms of imprisonment.

The Defendant faced a statutory maximum of ten to twenty years of imprisonment for each Robbery count. The Defendant had a prior record score of five. For Robbery, the offense gravity score ("OGS") was ten. In each of the home invasions, the Defendant used a firearm. Using the Deadly Weapons (Used) Matrix, the guidelines called for 78–90 months of imprisonment, +/- 12. For Conspiracy to Commit Robbery, the Defendant faced a statutory maximum of ten to twenty years of imprisonment. Under the sentencing guidelines, the OGS for Conspiracy to Commit Robbery was nine; the standard range was 48–60 months, +/- 12.

For each Burglary count, the Defendant faced a maximum sentence of ten to twenty years of imprisonment. The OGS for Burglary was nine. Using the Deadly Weapons (Used) Matrix, the guidelines called for 66–78 months of imprisonment, +/- 12. For Conspiracy to Commit Burglary, the Defendant faced a maximum of ten to twenty years of imprisonment. The OGS was eight; the standard range was 27–33 months, +/-12.

For each count of Aggravated Assault, the Defendant faced a maximum sentence of ten to twenty years of imprisonment. The OGS for Aggravated Assault was ten. With the Deadly Weapons (Used) Matrix, the guidelines called for 78–90 months of imprisonment, +/- 12.

For each count of Firearms Not to be Carried Without a License, the Defendant faced a maximum penalty of three and one-half to seven years of imprisonment. The OGS for Firearms Not to be Carried Without a License was nine; the standard range was 48–60 months, +/- 12.

For False Imprisonment (F2), the maximum was five to ten years of imprisonment. The OGS was eight. With the Deadly Weapons (Used) Matrix, the guidelines called for 39–45

months of imprisonment, +/- 12. For False Imprisonment (M2), the maximum was one to two years. The OGS was two. With the Deadly Weapons (Used) Matrix, the guidelines called for 7–15 months, +/-3.

For Theft, the maximum sentence was two and a half to five years of imprisonment. The OGS for Theft was three; the standard range called for 6–16 months of imprisonment, +/-3. Lastly, for PIC, the maximum sentence was two and a half to five years. The OGS for PIC was four; the standard range called for 9–16 months, +/-3. The aggregate sentence for the statutory maximum for all charges was 391 and one-half to 783 years of imprisonment.

This Court heard testimony from multiple victims and considered the profound impact that the Defendant's crimes had on them and their families. In addition to the significant financial loss of thousands of dollars in cash, electronics, and jewelry, the victims also suffered physical and severe emotional trauma. The Defendant and his co-conspirator specifically targeting and preyed on Chinese-American business owners, believing that Asians kept money at home instead of a bank, and that Asians would be less likely to report crimes. The Defendant and his co-conspirator consciously and deliberately chose not to rob their businesses, but to invade their homes at night when they knew children and family would be present. After waking up the adults and children at gunpoint, the Defendant and his co-conspirator tied them up. In some cases, the Defendant and his co-conspirator pistol-whipped the adults.

After hearing argument from both the Commonwealth and the Defendant, this Court imposed a mitigated-range sentence of thirty to sixty years of imprisonment. Because these violent home invasions occurred on separate dates over three months, at different locations, involving multiple victims, this Court, within its discretion, imposed the total sentence for some

9

of the home invasion to run consecutively. *See Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (A defendant is not entitled to a "volume discount" for his multiple offenses).

The Defendant was thirty-three years old at the time he perpetrated these offenses. Consideration of the Defendant's age, prior contacts with the justice system, and the predatory nature of these crimes gave this Court pause before imposing sentence. Unlike younger defendants with similar prior record scores, this Defendant has demonstrated a distinct lack of maturity and clear inability to conform his behavior to that of a civil society. The instant matters reflect a disturbing escalation of the Defendant's behavior into a pursuit of increasingly violent and heinous crimes. Despite the Defendant's numerous contacts with the criminal justice system as both a juvenile and as an adult, past leniency and the rehabilitative programs provided by the court system have proven ineffective in stemming the Defendant's criminal tendencies. Though the Defendant previously served county time for criminal trespass and weapons charges, the efforts of the court system could not prevent him from re-entering the prison system as a parole violator, or keep him from committing this most serious offense. Accordingly, this Court deemed that a significant period of incarceration was necessary to protect the interests of society.

Indeed these were cowardly, invasive, and violent crimes, which not only severely impacted the victims, but had a profound effect on the entire Philadelphian community. These home invasions were so terrifying that the Philadelphia City Council issued a resolution to address their considerable impact on Philadelphia and its Asian-American community.[5]

The Defendant fails to demonstrate how this Court imposed a manifestly excessive sentence. This Court's aggregate sentence fell well below the statutory maximum of 391 and

---

[5] *See* Council of the City of Philadelphia, Resolution 160829.

10

one-half to 783 years of imprisonment faced by the Defendant, and more than fifteen years below the Commonwealth's recommendation of 45 to 90 years.

For the foregoing reasons, the Defendant's judgment of sentence should be affirmed.

BY THE COURT,

*Barbara McDermott*

Barbara A. McDermott, J.

11